## UNITED STATES DISTRICT COURT

## DISTRICT COURT OF MASSACHUSETTS

| | | |
|---|---|---|
| **THOMAS M. HELLER,** | ) | **Civil Action No:**_____ |
| **Plaintiff** | ) | |
| **v.** | ) | |
| | ) | |
| **AXA EQUITABLE FINANCIAL** | ) | |
| **SERVICES, INC., AXA EQUITABLE** | ) | |
| **LIFE INSURANCE CO., AXA** | ) | |
| **ADVISORS, LLC, AND AXA** | ) | |
| **NETWORK, LLC., et al.** | ) | |
| **Defendants** | ) | |
| | ) | |

## MOTION TO VACATE ARBITRATION AWARD

### INTRODUCTION

1.  This action is brought to vacate an arbitration award by a Financial Industry Regulatory Authority (hereinafter "FINRA") Panel against Plaintiff on August 13, 2013.

### VENUE AND JURISDICTION

2.  Jurisdiction is proper as this Honorable Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332.

3.  Diversity of Citizenship is satisfied as The Plaintiff is a Massachusetts resident. Defendants are all AXA subsidiary corporations, and are incorporated in Delaware, with their principle place of business in New York, New York.

4.  Amount in Controversy is satisfied as 1) The Plaintiff, as Claimant below, sought damages in excess of $75,000.00; and 2) The arbitration award to Defendants on its counter claim totaled $471,086.32.

5.  Venue is proper as a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts, including the arbitration that gave rise to this Motion to Vacate.

**PARTIES**

6.    Plaintiff, Thomas M. Heller (hereinafter "Plaintiff" or "Heller") is an individual residing at 19 Fieldstone Lane, Natick, Massachusetts, 01760.

7.    Defendants AXA Financial, Inc., AXA Equitable Financial services, LLC and it's affiliates and subsidiaries, AXA Equitable Life Insurance Company, and its affiliates and subsidiaries, AXA Life and Annuity Company and AXA Distributors, LLC, AXA Distribution Holding Corporation and its affiliates and subsidiaries, AXA Network LLC and AXA Advisors LLC and MONY Life Insurance Company and its affiliates and subsidiaries, MONY Securities Corporation and MONY Brokerage, Inc. and MONY Life Insurance Company of America. (hereinafter "Defendants"), continue to maintain an office at 40 Williams Street, Suite 200, Wellesley, MA 02481, which they maintained throughout time in controversy.

8.    The Defendants are registered broker dealers registered with the Securities and Exchange Commission. The Respondents operate from locations throughout the United States including the aforementioned Wellesley, Massachusetts.

**FACTUAL BACKGROUND**

9.    Heller signed and executed written employment contracts with the Defendants on or about October 1, 2004. Heller signed employment contracts with AXA Advisors (hereinafter "AXAA") and AXA Network (hereinafter "AXANW"), along with their assorted subsidiaries.

10.   Heller's employment contract specifically bound AXANW and AXAA to arbitrate any disputes upon demand of either party.

11.   Plaintiff Heller was "locked out" of the AXAA Branch without notice, and without explanation from Mr. Sicard, Mr. Rindler or Mr. Rugierro despite written and oral requests for same during the week of November 10, 2004.

12.   A customer complaint was lodged by Johanna H. Porter (hereinafter "Porter") on November 4, 2005 claiming a violation in respect to the 10 day "free look" provision associated with Porter's purchase of AXA Equitable Life Insurance (hereinafter AXAEQLI) annuity, referred to as the Accumulator Plus VAK.  Porter's complaint

charged that an unnamed "AXA Agent" had failed to advise Porter of her free look period.

13.     Heller was terminated by Defendants on November 10, 2005. Defendants initially reported this termination as a voluntary resignation, which Defendants subsequently amended on November 14, 2005 and again on January 3, 2006 to reflect further false information on the part of the Defendants.

14.     The Porter complaint was settled away from Heller on December 21, 2005. The amount of the settlement was Twelve Thousand Seven Hundred Thirty Eight Dollars and Ninety Six Cents,($12,738.96).

15.     Heller was not made part of the settlement negotiations between Porter and Defendant. Of note, Heller was not the designated responsible individual for the purposes of informing Porter of the ten (10) day "free look" period.

16.     John Aliperta (hereinafter "Aliperta"), an employee of Defendants at the time of the transaction, was primarily in charge of Porter's account. It was Aliperta whom delivered the annuity contracts to Porter and was responsible for informing Porter of the "free look" period.

17.     Defendants cited Porter's complaint as the reason for Heller's termination, despite the clear evidence that it was Aliperta whom would be responsible for any failure to inform Porter of the "free look" period and other provisions of the annuity contracts.

18.     Defendants falsely attributed the entire claim to Plaintiff by amendment to Plaintiff's form U5 on November 15, 2005.

19.     On February 3, 2006 Heller received an inquiry from NASD regarding Porter's customer complaint. Heller fully complied with this inquiry as required.

20.     On April 25, 2006 Heller received notification from NASD that the inquiry had been closed. No change was made to the false information contained on Heller's CRD. Specifically, the disclosure event related to Porter's Complaint remains uncorrected.

21.     On October 3, 2008 Heller filed a Statement of Claim (hereinafter "SOC") and Uniform Submission Agreement (hereinafter "USA") with FINRA. This Claim put forth multiple theories for relief based on Defendant's actions, including wrongful termination, misrepresentation, failure to provide material information, omission of fact, untrue

statements of material facts, breach of fiduciary duty, failure to act, failure to supervise, breach of contract, defamation, and negligence.

22.     The USA sought expungment of Defendant's unsupported and defamatory statements on Heller's Form U5, along with monetary damages.

23.     On October 15, 2009, FINRA informed Heller by mail that FINRA considered his SOC deficient due to named respondents not being member firms of FINRA.

24.     On December 18, 2009, Heller resubmitted his SOC to FINRA, while directing FINRA case manager, Bola Aguda's (hereinafter "Aguda") attention to both Heller's employment contract and other documents indicating that named Respondents were properly bound to arbitrate.

25.     On March 4, 2009, Defendants sent a letter to Aguda purporting to unilaterally decline Arbitration on behalf of multiple AXA subsidiary corporations, including AXANW and AXAEQLI.

26.     On March 27, 2009 Plaintiff directly notified FINRA, through Aguda, that it would not accept Defendants' unilateral attempt to remove vital parties from arbitration. Plaintiff informed Aguda that the issue of parties required to submit to arbitration was a question to be put before the full arbitration Panel, as required by FINRA Rules.

27.     On April 21, 2009, AXAA submitted its USA, which included a Counter Claim in the amount of $3,269.78 for prepaid commissions purportedly not received by AXAA but prepaid to Heller.

28.     Over the course of this arbitration, AXANW and AXAA have taken negative commissions far surpassing the amount in counterclaim from Plaintiff.

29.     On April 30, 2009 Defendants sent a letter directly to FINRA asserting that despite Defendants' the fact that Heller was employed by AXAA and AXANW and had a binding agreement to arbitrate with both, AXANW and AXAEQLI unilaterally "declined" to arbitrate. Continuing with Defendants' unilateral decision on what entities are bound by contract law, Defendants then offered to submit AXANW and AXAEQLI to arbitration if Heller would give up all claims against other AXA companies.

30.     On May 18, 2009 Defendants wrote to FINRA in response to a notice informing Defendants that they were overdue in filing a USA on behalf of, among others, AXANW and AXAEQLI. Defendants again asserted that Heller's employment contract, which

specifically bound AXANW and AXAA to arbitration upon demand of either party, was not effective to secure AXANW participation in arbitration.

31.    On May 28, 2009 Aguda, responding to Heller's request that Aguda require AXANW and AXAEQLI to submit a USA, denied Plaintiff's request, improperly dismissing both parties from the arbitration in clear violation of FINRA Bylaws, Rules, and the Code of Arbitration. Specifically, this action by Aguda was a direct violation of FINRA Rule 12504 and 13504.

32.    The May 28, 2009 determination that Heller's contract with AXANW to arbitrate all disputes was not controlling, along with the unilateral decision to allow Plaintiff to dismiss AXAEQLI from participation in arbitration was made by a Case Manager, Aguda, and thus improperly and fatally removed the key Respondent's in this matter with no fact finding or due process before a panel of arbitrators, as required by FINRA Bylaws, Rules and the Code of Arbitration.

33.    The removal of Plaintiff's direct employers from the arbitration process in violation of FINRA Bylaws, Rules and the Code of Arbitration manifestly prejudiced Plaintiff. In addition to destroying any ability for the Arbitration process to produce a final resolution of Heller's claims, Aguda's improper actions also removed any ability for Heller to obtain vital discovery from his direct employer.

34.    Plaintiff pressed on with the arbitration, as FINRA arbitration was the only forum to pursue his claims and seek expungment of his U5 and associated damages.

35.    The Panel in this matter was appointed on May 22, 2009.

36.    A telephonic conference regarding discovery issues was held on December 10, 2013. At that conference the Panel charged Defendants to fully comply with Heller's discovery requests by January 15, 2010.

37.    Plaintiff served discovery requests on Defendants on December 16, 2009 in accordance with the Panel's order.

38.    On December 29, 2009 Plaintiff received a notice of deficiency in his discovery requests provided to Defendants. Despite the completeness of Plaintiff's responses, Defendants threatened to file a Motion to Compel.

39.    On January 15, 2010, Defendants refused to turn over meaningful discovery, and instead objected to all requests from Plaintiff. Of note is that any requests for Electronically

Stored Information (hereinafter "ESI"), which was and remains vital to Plaintiff's claims, were met with blanket refusal for being "burdensome" and "overly broad".

40. At this point there was a breakdown in the discovery process, as Defendants continued to seek expansive discovery, while providing little to no disclosure in return. In the interests of trying to resolve these issues and obtain vital discovery, Plaintiff brought these concerns to the Panel.

41. Despite its assertion that the parties were "continuing to engage in discovery" in its joint letter on behalf of the parties on February 2, 2010, Plaintiff had become aware over the course of this matter that the Defendants were withholding exculpatory information from the Panel and discovery requests by Plaintiff. In particular, statutory records required to be kept by Defendants indicated that Defendants had internally concluded that Porter's underlying claim "had no merit".

42. In addition, Plaintiff became aware that Defendants had not produced the annuity delivery receipt which was signed by Porter and Aliperta in response to NASD inquiry. This document is exculpatory, as it clearly indicates that Plaintiff was not the Broker responsible for informing Porter of the ten (10) day free look period and other vital information regarding the annuity contracts.

43. This failure to disclose exculpatory evidence was brought to the Panel's attention during a telephonic hearing held July 7, 2011. Despite this knowledge, Panel continued to allow Defendants to continue their evasive and bad faith discovery practices while providing no response to Plaintiff's requests to order Defendants to turn over exculpatory evidence known to be in their possession and control.

44. During the telephonic hearing held July 7, 2011, Defendants again asserted to the Panel that Defendants would comply with discovery in good faith. Despite this assertion, Defendants continued to stall the process and failed to provide Plaintiff with the exculpatory evidence referenced above.

45. In an attempt to gain meaningful discovery from the Defendants, Plaintiff specifically identified the exculpatory information he was requesting and the specific parties he sought it from in a correspondence to Defendant's counsel on July 14, 2011.

46. On July 27, 2011 Defendants responded that Defendants were "committed to working cooperatively" with Plaintiff, yet dismissed Plaintiff's request for email correspondence

from specific persons from specific time periods because it was "too burdensome." Defendants also dismissed Plaintiff's request for other ESI documents as "too burdensome" This is yet another instance of the Defendants refusing to participate in meaningful discovery as required by FINRA discovery guidelines, which was brought to the Panel's attention numerous times by Plaintiff.

47. As Plaintiff pointed out in its communication to Defendants' counsel on July 29, 2011, Defendants' conduct in refusing to provide ESI discovery is contrary to FINRA rules 3110, 3012 and 3013. The Panel was well aware of Plaintiff's concerns regarding the sufficiency of Defendants' production during this process, and chose to ignore Defendants' violations entirely while punishing Plaintiff with sanctions.

48. On August 11, 2011 Plaintiff put the Defendants' failure to participate in discovery formally before the Panel via a Motion to Compel Production of Documents. Defendant also filed a Motion to Compel in response.

49. On September 14, 2011 a telephonic hearing was held where Plaintiff put forth all violations of FINRA Discovery Rules and ESI principles via the Sedona Conference principles. The Panel was again made aware of Defendants' numerous attempts to stall discovery, withhold exculpatory evidence, and in general corrupt the discovery process. The panel charged the parties with providing sample orders to compel to the Panel.

50. Following said filings, the Panel did not provide the parties with a timely order. Plaintiff's Counsel contacted FINRA by email on December 28, 2011 requesting an order in light of upcoming evidentiary hearings.

51. On December 28, 2011, less than two (2) hours after Plaintiff's inquiry, Defendants proceeded to dump over three thousand one hundred and eighty eight (3,188) PDF's, representing a total of 25,578 pages of unsorted material on Plaintiff. These PDF's were in raw format and not sortable as required by FINRA discovery guidelines. This production materialized after nearly two (2) years of assertions by Defendants that such production would be impossible and unduly burdensome.

52. Of note is that this production was produced less than a month before the first scheduled Evidentiary Hearing before the Panel, January 2012, in a clear bad faith effort to prejudice the Plaintiff's ability to prepare for those hearings.

53.     On February 7, 2012 the Panel issued an order on Heller's Motion to Compel Discovery. Heller's motion was summarily denied. In addition, the Panel granted Defendants' counter motion in its entirety. In addition, the order reprimanded Heller for objecting to Defendants' requests, and imposed strict time tables for cooperating with Defendants. This order completely ignored Plaintiff's rights in the FINRA process, despite the Panel's knowledge of Defendants' withholding of vital, exculpatory evidence and continuing willful failure to participate in meaningful discovery.

54.     Due to the continued failure by the Panel to address the numerous and willful Violations in the discovery process, Plaintiff was unable to secure any substantive discovery from the Defendant. This failure of the Panel to enforce FINRA's discovery guidelines led to an inability for the arbitration process to function. As such, Heller proposed that the hearing date be postponed due to the inadequacy of discovery and the Defendant's conduct in delaying production of their massive production of documents until the last possible moment to prejudice Plaintiff.

55.     On February 6, 2013, in an effort to obtain some sort of meaningful discovery, and thus prepare himself to present his claims, Plaintiff proposed the appointment of a discovery master to mediate the parties' discovery concerns. Defendants initially agreed to this course of action.

56.     However, Defendants' quickly withdrew their commitment to mediating discovery concerns when it became clear Defendants would not enjoy the same unilateral control over discovery afforded them by the Panel. The Panel once again failed to address Heller's concerns, and no Discovery Master was appointed.

57.     Left with no choice, Heller filed a Motion to Remove the Panel on April 2, 2013. This request was again denied without explanation or comment.

58.     Due to the Panel's prejudicial conduct, the Defendants conduct in withholding exculpatory evidence from the Panel, and the failure of the Panel to conduct itself in accordance with FINRA's Bylaws, Rules and Code of Arbitration, the Panel's refusal to hear evidence material and relevant to the controversy, and other violations resulting in an inequitable forum, Plaintiff informed the Panel that Plaintiff could not participate in the scheduled hearing.

59.    The hearing was held without Plaintiff's attendance on April 22, 2013. An award subsequently issued on August 13. 2013.

60.    The award dismissed all of Heller's claims and granted Defendants' $457,201.00 in attorney's fees on a counter claim award of $1,660.32.

## COUNT 1

### (Federal Arbitration Act)

61.    Plaintiff restates and repeats the allegations set forth in paragraphs 1 through 58 of the complaint as set forth herein.

62.    The FINRA Arbitrators engaged in misbehavior by which the rights of a party have been prejudiced when Bola Aguda, a Case Manager, violated FINRA Rules 12504 and FINRA Rule 13504 by granting Defendant's unilateral request to dismiss Plaintiff's chosen parties from the arbitration without a factual hearing.

63.    The FINRA Arbitrators engaged in misbehavior by which the rights of a party have been prejudiced when Bola Aguda, a Case Manager, violated FINRA Rules 12504 and FINRA Rule 13504 by granting Defendant's unilateral request to dismiss Plaintiff's claims against multiple parties without a factual hearing.

64.    The FINRA Arbitrators engaged in misbehavior by which the rights of a party have been prejudiced when the Panel failed to enforce FINRA discovery guidelines.

63.    The Arbitrator's award was the product of the above in violation of 9 USC § 10 (a)(3).

## COUNT 2

### (Federal Arbitration Act)

64.    Plaintiff restates and repeats the allegations set forth in paragraphs 1 through 63 of the complaint as set forth herein.

65.    The Arbitrators exceeded their power by ignoring the plain language of Plaintiff's employment contract by not requiring parties legally bound to arbitrate to do so.

66.    The Arbitrators exceed their power when Aguda dismissed necessary and required parties from the arbitration without a required evidentiary hearing before the Panel.

67.    The Arbitrators exceeded their power when they dismissed Plaintiff's Claims prior to a required evidentiary hearing before the Panel.

68. The Arbitrators exceed their powers when they refused to address Defendants' discovery violations. Such conduct by the arbitrators is not in accordance with FINRA discovery guidelines or the Code of Arbitration.

69. The Arbitrators imperfectly executed their powers that a final, mutual, and definite award upon the subject matter was not made when they dismissed Plaintiff's claims prior to a required evidentiary hearing.

70. The Arbitrators imperfectly executed their powers that a final, mutual, and definite award upon the subject matter was not made when the arbitrators allowed Defendants, unilaterally and without hearing, to dismiss necessary and legally bound parties from this dispute.

71. The Arbitrator's award was the product of the arbitrators exceeding their powers, or so imperfectly executing them that a mutual, final, and definite award upon the subject matter was not made in violation of 9 USC § 10 (a)(4).

WHEREFORE, the Plaintiff respectfully requests this Court to:

1. Schedule oral arguments upon Plaintiff's Motion;

2. Enter Judgment in Plaintiff's favor vacating the arbitration award; and

3. Award Plaintiff costs incurred in this action and grant such other and further relief as may be just and proper.

Dated: November 7, 2013

Respectfully submitted,
Thomas M. Heller, Plaintiff,
By his attorney,

/s/ Richard W. Kearney
Richard W. Kearney, Esquire
B.B.O. #263080
KEARNEY & MACDONALD
800 Hingham Street, Suite 201S
Rockland, MA 02370
(781) 871-4333
richard@kearneymacdonald.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on November 7, 2013. The following non-registered participant was served via electronic mail and Federal Express overnight delivery, with signature required, sent to Kenneth DiGia, Esquire, Epstein Becker & Green, 250 Park Avenue, New York, NY 10177.

<u>/s/ Richard W. Kearney</u>
Richard W. Kearney, Esquire
B.B.O. #263080
KEARNEY & MACDONALD
800 Hingham Street, Suite 201S
Rockland, MA 02370
(781) 871-4333
richard@kearneymacdonald.com