# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS M. HELLER, <br><br> Plaintiff <br> v. <br><br> AXA EQUITABLE FINANCIAL SERVICES, INC., AXA EQUITABLE LIFE INSURANCE CO., AXA ADVISORS, LLC, AND AXA NETWORK, LLC, et al., <br><br> Defendants | Civil No. <br> 13-12828-FDS |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO VACATE THE ARBITRATION AWARD AND DEFENDANTS' MOTION TO CONFIRM THE ARBITRATION AWARD

**SAYLOR, J.**

This is an action to vacate an arbitration award. The award was entered in an employment dispute between plaintiff Thomas M. Heller and defendant AXA Advisors, LLC. Plaintiff contends that this award must be vacated pursuant to 9 U.S.C. §§ 10a(3) and 10a(4) because the arbitration panel acted improperly by (1) dismissing necessary parties to the arbitration, (2) granting defendant's request to dismiss plaintiff's claims against multiple parties without a factual hearing, and (3) failing to enforce Financial Industry Regulatory Authority ("FINRA") discovery guidelines.

Plaintiff has moved to vacate the arbitration award and defendants have cross-moved to confirm it. For the reasons set forth below, plaintiff's motion to vacate will be denied and defendant's cross-motion to confirm will be granted.

I. **Background**

The facts are set forth below as recorded in the arbitrators' award unless otherwise noted.[1]

On October 1, 2004, AXA Advisors, LLC ("AXA Advisors") and AXA Network, LLC ("AXA Network") offered Heller an at-will employment opportunity as a sales associate. (Compl., Ex. A at 1). Upon accepting the offer, Heller signed employment agreements with both AXA Advisors and AXA Network. (Compl., Ex. A at 3-13).

Section XVII of each employment agreement stated, in relevant part, that "[t]he Associate agrees, as a condition of association or employment with [AXA Advisors/AXA Network], that any controversy or dispute arising under this Agreement or out of the Associate's association or employment with [AXA Advisors/AXA Network] will be submitted to arbitration upon demand of either party." (Compl., Ex. A at 4-5, 8).

In November 2005, AXA Advisors and AXA Network terminated Heller. (Compl., Ex. 34 at 13-32).

Heller filed a claim with the FINRA Dispute Resolution in October 2008 against AXA Network, AXA Advisors, and various affiliates (AXA Distributors, LLC ("AXA Distributors"); AXA Distribution Holding Corporation; AXA Equitable Financial Services, LLC; AXA Equitable Life Insurance Company (" AXA Equitable Life"); AXA Financial, Inc.; AXA Life and Annuity Company; Mony Brokerage, Inc.; Mony Financial Services, Inc.; Mony Life Insurance Company; Mony Life Insurance Company of America; and Mony Securities

---

[1] In determining the relevant facts upon review of an arbitration award, a reviewing court is "bound by an arbitrator's findings of fact." *Mercy Hosp., Inc. v. Mass. Nurses Ass'n.*, 429 F.3d 338, 344 (1st Cir. 2005) (citing *El Dorado Tech. Servs. Inc. v. Union Gen. De Trabajadores*, 961 F.2d 317, 320 (1st Cir. 1992)).

Corporation ("Mony Securities")). The claim asserted various causes of action, including wrongful termination, misrepresentation, failure to provide material information, omission of facts, making of untrue statements of material fact, breach of fiduciary duty, failure to act, failure to supervise, participation in conflicts of interest to Heller's detriment, breach of contract, defamation, negligence, intentional infliction of emotional distress, and commission of manipulative or deceptive acts as a scheme to defraud. Heller requested out-of-pocket damages, compensation for lost wages, punitive damages, and that the arbitration panel mandate that his SEC U4 and U5 forms, as well as any related regulatory documents, be corrected in order to restore his professional reputation.

AXA Advisors, AXA Distributors, and Mony Securities responded to the claim, denying the allegations and asserting various affirmative defenses. They requested that the claim be dismissed in its entirety and sought their costs and attorneys' fees. AXA Advisors also filed a counterclaim, asserting claims for breach of contract and unjust enrichment.

The arbitration panel determined that AXA Network and nine other entities (AXA Distribution Holding Corporation; AXA Equitable Financial Services, LLC; AXA Equitable Life; AXA Financial, Inc.; AXA Life and Annuity Company; Mony Brokerage, Inc.; Mony Financial Services, Inc.; Mony Life Insurance Company; and Mony Life Insurance Company of America) were neither members nor associated persons of FINRA, and dismissed the claims as to those defendants. The panel also found that those parties had not voluntarily submitted to arbitration. The panel made no determination on the merits regarding Heller's claims against those parties.

In September 2009, AXA Distributors and Mony Securities filed a motion to dismiss

with the arbitration panel. After oral argument, the panel granted the motion. That left AXA Advisors as the sole remaining defendant.

In February 2012, the panel ordered Heller to produce certain discovery responses. On June 4, the panel ordered him to comply with the February order by June 15, 2012. (DeGia Aff., Docket No. 9, Ex. 3 at 41). On June 18, AXA Advisors filed a motion to dismiss on the ground that Heller had failed to comply with the arbitration panel's discovery orders. Heller objected to the motion to dismiss, but did not comply with the panel's orders. On November 30, the panel denied the motion to dismiss, but precluded Heller from introducing any evidence or documents that should have been produced in discovery pursuant to the February 2012 order. The panel also awarded AXA Advisors its attorneys' fees and costs incurred during the discovery dispute.

On April 22, 2013, the arbitration panel held a hearing on the substantive claims. Heller declined to attend. The panel determined that Heller received due notice of the hearing, and that it would proceed with the hearing without him in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes (the "FINRA Code").[2] At the hearing, AXA Advisors made an oral motion to dismiss Heller's claim with prejudice. The arbitration panel granted the motion. It also awarded AXA Advisors compensatory damages totaling $1,660.32 on its counterclaim; $69,281.20 in attorney's fees and costs as a sanction pursuant to the panel's November 20, 2012 discovery order; and an additional $387,919.80 award for attorney's fees and costs otherwise associated with the case.

Heller filed a motion to vacate the arbitration award with this Court on November 7,

---

[2] According to the FINRA Code, "if a party fails to appear at a hearing after having been notified of the time, date, and place of the hearing, the panel may determine that the hearing may go forward, and may render an award as though all parties had been present." FINRA Code, Failure to Appear, § 13603 (amended 2008).

4

2013. On November 27, 2013, defendants filed a cross-motion to confirm the award.

## II. Standard of Review

Judicial review of an arbitration decision is "extremely narrow and exceedingly deferential." *Dennis v. Wachovia Sec., LLC*, 429 F. Supp.2d 281, 287 (2006) (quoting *Wheelabrator Envirotech Operating Servs., Inc. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 43 (1st Cir. 1996)). When a party seeks judicial review of an arbitration decision, a court will "set that decision aside only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Indeed, an arbitrator's award will be upheld even in light of a "serious factual mistake" so long as "there exists any plausible argument to support the arbitrator's decision." *Dennis*, 429 F. Supp.2d at 287 (quoting *North Adams Reg'l Hosp. v. Mass. Nurses Ass'n*, 889 F. Supp. 507, 512-13 (D. Mass. 1995)).

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, defines the specific grounds for which an arbitration award can be overturned. An award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10 (2012). Specifically, plaintiff relies on the following provisions of 9 U.S.C. § 10: "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

    (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

    (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

5

*Id.* § 10(a)(3)-(4). The challenging party has the burden to establish "substantially more than an erroneous conclusion of law or fact." *Local Union No. 251 v. Narragansett Imp. Co.*, 503 F.2d 309, 312 (1st Cir. 1974).

## III. Analysis

### A. Whether Parties Were Improperly Omitted From Arbitration

Plaintiff first contends that this Court should reverse the arbitration panel's decision because the FINRA case manager, Bola Aguda, dismissed "vital and necessary parties" from the arbitration. (Pl. Mem. at 9). Before this Court can determine whether the parties were improperly dismissed, it must determine whether they were truly "necessary" parties.

The primary purpose of the Federal Arbitration Act ("FAA") is to "ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). When enforcing an agreement to arbitrate a dispute, arbitrators must "give effect to the contractual rights and expectations of the parties." *Id.* Indeed, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Parties are generally allowed to structure arbitration agreements as they desire. *Id.*; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Further, "absent some ambiguity in the agreement . . . the language of the contract . . . defines the scope of the disputes subject to arbitration," and nothing in 9 U.S.C. § 2 authorizes a court to "compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *E.E.O.C. v. Waffle*

6

*House, Inc.* 534 U.S. 279, 289 (2002).

Plaintiff contends that AXA Network was required to arbitrate under FINRA's arbitration procedure pursuant to his employment contract. The relevant contractual language states that "as a condition of association or employment . . . any controversy or dispute arising under this [a]greement, or out of [plaintiff's] association or employment with [AXA Network] . . . will be submitted to arbitration upon demand of either party." It further states, "[a]ny arbitration pursuant to this [a]greement shall be conducted in accordance with, and governed by the Code of Arbitration Procedures of the National Association of Securities Dealers ("NASD"), if within the NASD's jurisdiction, and if not, then by in accordance with the rules and procedures of the American Arbitration Association." (Compl., Ex. A at 5).[3] Thus, while the contract does require the parties to arbitrate any dispute, the parties must only arbitrate under FINRA if within its jurisdiction.

Arbitration by FINRA is governed by its own code of procedure. Under § 13200 of the FINRA Code, parties must arbitrate a dispute under the Code if "the dispute arises out of the business activities of a member or an associated person and is between or among: [m]embers; [m]embers and [a]ssociated [p]ersons; or [a]ssociated [p]ersons." (FINRA Code, Required Arbitration, § 13200 (amended 2008)). The FINRA Code defines "member" as "any broker or dealer admitted to membership in FINRA . . . and any broker or dealer admitted to membership in a self-regulatory organization that . . . has required its members to arbitrate pursuant to the Code . . . ." (FINRA Code, Definitions, § 13100 (amended 2013)). The FINRA Code further defines "person associated with a member" as, in part, a natural person who has either applied

---

[3] NASD and "the member regulation, enforcement and arbitration operations of the New York Stock Exchange" consolidated in July 2007 to form FINRA.

7

for registration under FINRA Rules or is a natural person who either directly or indirectly controls or is controlled by a "member." *Id.*

It is undisputed that AXA Network is not a member of FINRA. Furthermore, under the FINRA Code, AXA Network is not an associated person of a member and AXA Network did not voluntarily elect to arbitrate under FINRA's jurisdiction. Although the contractual language contained in the employment contract may bind AXA Network to arbitration, it does not bind AXA Network to arbitrate disputes with FINRA. AXA Network was therefore not a proper or necessary party to the arbitration.

Plaintiff further contends that Aguda exceeded his power when he "unilaterally declare[d]" that AXA Equitable Life was not required to participate in arbitration. (Pl. Mem. at 10-11). It appears that AXA Equitable Life was, indeed, a member of FINRA. (Compl., Ex. OO at 1). However, AXA Equitable Life was dismissed as a party because plaintiff had failed to include a claim against it in his original claim. *Id.* Furthermore, Aguda notified plaintiff that, if he desired to include AXA Equitable Life as a party, he could amend his claim. *Id.* Plaintiff apparently never did so.

In any event, AXA Equitable Life was not plaintiff's employer. Indeed, plaintiff signed employment contracts only with AXA Network and AXA Advisors. (Compl., Ex. A). Furthermore, it was AXA Advisors that terminated plaintiff after a complaint and filed the required post-termination paperwork with FINRA. (Compl., Ex. E). It accordingly appears that the plaintiff's disputes do not involve AXA Equitable Life, and that it was properly omitted from the arbitration pursuant to FINRA Code § 13200.

Plaintiff's assertions that Aguda exceeded his power by dismissing AXA Network and

8

AXA Equitable Life is misplaced. It is true that, under the FINRA Code, motions to dismiss "will be decided by a full panel." (FINRA Code, Motions to Dismiss, § 13504 (a)(4) (amended 2011)). However, neither AXA Network nor AXA Equitable Life were ever parties to the arbitration. (DeGia Aff., Docket No. 9, Ex. 3 at 115-124). Because they were never parties to the arbitration, technically there were no claims to dismiss. Finally, and in any event, the Court will not vacate the arbitration award over what is, in context, a relatively trivial procedural dispute.

B. **Discovery Disputes**

Plaintiff next contends that the arbitration panel acted improperly and exceeded its power when it refused to enforce the FINRA discovery rules. In particular, plaintiff contends that because the arbitration panel did not enforce FINRA's discovery code, plaintiff could not "fully and fairly pursue his claims." (Pl. Mem. at 18). Again, court review of an arbitration award is "extremely narrow and exceedingly deferential." *Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 496 (1st Cir. 2005) (quoting *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000)). Moreover, "[a]rbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing." *National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985).

Plaintiff contends that the arbitration panel systematically "stonewalled" him and aligned with defendants in halting the discovery process. However, the panel held several hearings on the discovery disputes, and actually declined defendant's request to dismiss plaintiff's claims because of plaintiff's own failure to comply with discovery requests. And although plaintiff

9

contends that he was "bombarded" with discovery in December 2011, the hearing did not occur until April 2013, more than a year later, giving him ample time to review any discovery or seek further relief from the panel.

It is the Court's role to uphold the arbitration panel's decision as long as the arbitration panel is even "arguably . . . acting within the scope of [their] authority." *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001). The FINRA Code grants the arbitration panel the authority to manage discovery, ensure that parties follow discovery guidelines and proceed in good faith, and issue sanctions if the panel finds that either party does not follow these guidelines. (FINRA Code, Discovery Sanctions, § 13511 (amended 2008)). The panel was acting well within its authority when it reviewed each party's requests and objections to various discovery matters, and when it made findings based on the materials presented to it. Therefore, the arbitration panel did not engage in misbehavior or exceed its authority when it supervised the discovery process in this arbitration.

### C. Motion to Dismiss of AXA Advisors

The arbitration panel properly granted the oral motion of AXA Advisors to dismiss Heller's claim with prejudice at a hearing before the panel on April 22, 2013. The Federal Arbitration Act's policy favoring arbitration "does not operate without regard to wishes of the contracting parties." *Mastrobuono*, 514 U.S. at 57. Just as parties may limit issues they can arbitrate through contractual agreement, they may similarly dictate the rules under which the arbitration will be conducted through contractual agreement. *Id.* at 57-58. Here, the employment contract stated, in relevant part, "[a]ny arbitration pursuant to this [a]greement shall be conducted in accordance with, and governed by the Code of Arbitration Procedures of

10

[FINRA], if within the [FINRA's] jurisdiction. . . ." (Compl., Ex. A at 5, 8). The FINRA Code states that "[i]f a party fails to appear at a hearing after having been notified of the time, date and place of the hearing, the panel may determine that the hearing may go forward, and may render an award as though all parties had been present." (FINRA Code, Failure to Appear, § 13603.)

Plaintiff failed to appear for a hearing scheduled for April 22, 2013. He contends that he did not show up because the arbitrators showed "complete disregard . . . to [his] claims and concerns," and failed to hold defendants to FINRA's guidelines. (Pl. Mem. at 7). At that hearing, the panel determined that plaintiff received appropriate notice and that the hearing would proceed without plaintiff pursuant to FINRA Code § 13603. The panel acted within its statutory and contractual authority when it granted the oral motion of AXA Advisors to dismiss with prejudice despite plaintiff's absence. Accordingly, plaintiff's motion to vacate the arbitration panel's award will be denied, and defendants' cross-motion to confirm the award will be granted.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion to vacate against all defendants is DENIED and defendants' cross-motion to confirm the arbitration panel's award is GRANTED.

**So Ordered.**

Dated: April 15, 2014

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge